IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JEREMY WAYNE GLADDEN                                                                 PLAINTIFF

v.                                          Civil No. 2:24-cv-02110-TLB-MEF

DETECTIVE SERENA HOLLAND,
Lufkin, Texas;
LIEUTENANT WESLEY WAGGONER,
Lufkin, Texas;
CAPTAIN MICHAEL HUBER,
Johnson County, Arkansas; and
INVESTIGATOR DEREK ROGERS,
Johnson County, AR                                                                  DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action filed by Plaintiff, Jeremy W. Gladden ("Gladden"), under 42 U.S.C. § 1983.  Gladden proceeds *in forma pauperis* and *pro se.*  Gladden contends his constitutional rights were violated when he was arrested without probable cause on or about January 25, 2024, excessive force was used against him, he was denied adequate medical care, and he was interrogated without counsel.

Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.  The case is before the Court for preservice screening pursuant to 28 U.S.C. § 1915A.[1]  Under § 1915A, the Court must screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

---

[1] Enacted as part of the Prison Litigation Reform Act.

1

## I.     BACKGROUND

Gladden filed this case on August 30, 2024.  (ECF No. 1).  The Court determined the Complaint was deficient for two reasons.  (ECF No. 3).  First, it failed to indicate how the named Defendants were personally involved in his arrest in the City of Altus, Franklin County, Arkansas. *Id.*  In this regard, it was noted that Gladden had named as Defendants two law enforcement officers from Lufkin, Texas, Defendants Holland and Waggoner.  *Id.*  Second, Gladden alleged he was denied medical care, but he mentioned being in jail in both Franklin and Hot Spring Counties without stating in what facility the alleged denial of medical care occurred.  *Id.*  For these reasons, Gladden was directed to file an Amended Complaint by September 20, 2024.  *Id.*

Gladden filed his Amended Complaint on September 11, 2024.  (ECF No. 8).  Gladden lists the date of the occurrences at issue as being January 25 to January 28, 2024.  *Id.* at 4.  Gladden alleges that Defendant Holland "knowingly charged me falsely, changing facts of the case, causing injury upon arrest."  *Id.*  Gladden asserts that Defendants Waggoner, Huber, and Rogers had him arrested without a warrant, interrogated without a lawyer present, and denied him medical care after his arrest.  *Id.*  According to Gladden, his appendix was ruptured and Defendants did not take him to the hospital upon his arrest or for three weeks afterwards.  *Id.* at 4-5.

Gladden states the Defendants contributed to his arrest without a warrant by falsifying search warrants, harassing his family, conducting an illegal search of his friends' house while looking for him, arresting three of his friends, and using excessive force against him.  (ECF No. 8 at 5).  The charges against his three friends were later dismissed.  *Id.*  While there was an arrest warrant, Gladden says it was backdated for it to appear as if his arrest had been legal.  *Id.*

2

Gladden indicates he was injured upon his arrest and in severe pain but did not see a doctor for three weeks. (ECF No. 8 at 5). Gladden says his appendix was damaged during his arrest and had to be removed. *Id.* He remained incarcerated for "over" eight months. *Id.*

For relief, Gladden seeks damages in the amount of $22,800,000 representing $100,000 per day for the 228 days he has been incarcerated as of September 8, 2024. (ECF No. 8 at 9). Additionally, Gladden seeks damages in the amount of $30,000,000 because his New York company, Atmno Inc. (?), went bankrupt due to his incarceration. *Id.* Finally, Gladden asks for an award of punitive damages.

## II.     LEGAL STANDARD

Under § 1915A, the Court is obliged to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 464 (E.D.N.C. 1987); *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Jackson*, 747 F.3d at 544 (cleaned up). However, the complaint must still allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985)

### III.   ANALYSIS

According to public court records, on January 26, 2024, an affidavit of probable cause for issuance of an arrest warrant was completed.[2] *State v. Gladden*, 36CR-24-75.[3] The affidavit states that Defendant Huber was contacted by Defendant Waggoner with the Angelina County Texas Sheriff's Office in Lufkin, TX. Defendant Waggoner reported Gladden was a person of interest in the homicide of Lawrence Wise ("Wise") and was believed to be in possession of Wise's vehicle. The vehicle had been reported as stolen. Gladden was believed to be staying with his father, Walter Nagel ("Nagel"), at 1182 County Road 2031. Narcotics investigators had visited the Nagel home recently and had seen Gladden and the vehicle in question. Investigators drove to the residence and found that the stolen vehicle, an S-10 truck, was parked at 1222 County Road 2031. Gladden made statements over the phone to investigators that his uncle had lent him the truck. Gladden remained hidden in the woods until located by investigators, then he fled on foot and resisted arrest. Gladden was arrested and charged with theft by receiving, fleeing, and resisting arrest. Although there is a place on the second page of the probable cause affidavit for a judicial officer's signature, no signature is present.

---

[2] A court may take judicial notice of public records. *See e.g, United States v. Eagleboy*, 200 F.3d 1137, 1140 (8th Cir. 1999).
[3] Arkansas court records are available on a website maintained by the Arkansas Judiciary. Gladden's records were obtained from this site.
https://caseinfo.arcourts.gov/opad/case/36CR-24-75 (last visited September 30, 2024).

On January 29, 2024, probable cause was found to detain Gladden, bond was set, a public defender was appointed, and a court date set. On March 18, 2024, a criminal information was filed charging Gladden with theft by receiving. An arrest warrant was issued that day. A final disposition of charge report indicates the decision was made not to file the charges of fleeing or resisting arrest. On September 23, 2024, a Sentencing Order was filed indicating the charge of theft by receiving had been nolle prossed.

### A. Claims against Defendants Holland and Waggoner

Gladden has named two non-resident Defendants. While Gladden alleges each were involved in the filing of false charges against him, he does not allege any direct contacts with the State of Arkansas. Neither were present in the State of Arkansas at the time of his arrest. Neither were involved in the decision made to charge Gladden with theft by receiving. The only connection apparent from Gladden's criminal case is a telephone call made by Defendant Waggoner to Defendant Huber. Before the Court can determine whether Gladden has stated plausible claims against these non-resident Defendants under § 1983, the Court must first determine whether the Defendants are even subject to suit in Arkansas.

A prima facie showing that personal jurisdiction exists is made when "sufficient facts [are pled] to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (internal quotations and citation omitted). Unless a federal statute authorizes nationwide service of process, which § 1983 does not,

> Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons. This is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant "who is subject to jurisdiction of a court of general jurisdiction in a state where the district court is located." Fed. Rule Civ. Proc. 4(k)(1)(A).

5

*Walden v. Fiore*, 571 U.S. 277, 283 (2014) (internal quotation marks and citations omitted).

Arkansas' long-arm statute is limited only by the constraints imposed by the Due Process Clause of the Fourteenth Amendment. Ark. Code Ann. § 16-4-101(B)[4]; *see also Yanmar Co., Ltd. v. Slater*, 386 S.W.3d 439, 443 (Ark. 2012) ("[T]he exercise of personal jurisdiction is limited only by federal constitutional law"). The Supreme Court's well-recognized test is whether such "minimum contacts" exist between the non-resident Defendant and the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "A defendant must have warning that his activities may result in his being haled into court in a particular jurisdiction and must invoke the benefits and protections of that jurisdiction by purposefully availing himself of the privilege of conducting those activities." *Porter v. Berall*, 293 F.3d 1073, 1075 (8th Cir. 2002) (citation omitted). "Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted).

> Determining whether a substantial connection exists requires consideration of five factors:
>
> (1) The nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state: (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

---

[4] "The courts of this state shall have personal jurisdiction of all persons, and all causes of action or claims for relief, to the maximum extent permitted by the due process clause of the Fourteenth Amendment of the United States."

*Porter*, 293 F.3d at 1076 (citing *Land-O-Nod Co. v. Bassett Furniture Indus.*, 708 F.2d 1338, 1340 (8th Cir. 1983)).  In *Porter*, the Eighth Circuit held that "[c]ontact by phone or mail is insufficient to justify the exercise of personal jurisdiction under the due process clause." *Id.*

Accordingly, this Court lacks personal jurisdiction over Defendants Holland and Waggoner.  Gladden was already given an opportunity to amend his Complaint to indicate how Defendants Holland and Waggoner "were personally involved in his arrest in the City of Altus, Franklin County, Arkansas." (ECF No. 3).  Allowing further amendment would be futile.

### B.     False Arrest Claim

"Under the Fourth Amendment, a person has a right 'to be secure in [his] person[]' and warrants may not issue 'but upon probable cause.'" *Ross v. City of Jackson, Mo.*, 897 F.3d 916, 920 (8th Cir. 2018) (quoting U.S. Const. amend. IV).  The Fourth Amendment is violated "when there is a warrantless arrest that is not supported by probable cause to believe that a crime has been committed." *Id.*  A false arrest claim under § 1983 "fails as a matter of law where the officer had probable cause to make the arrest." *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001).

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).  "'The substance of all the definitions of probable cause is a reasonable ground for belief of guilt.'" *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (internal quotation omitted)).  "Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is

7

being committed." *Brinegar*, 338 U.S. at 175 (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

Arkansas' Theft by Receiving statute, Ark. Code Ann. § 5-36-106, provides as follows:

(a) A person commits the offense of theft by receiving if he or she receives, retains, or disposes of stolen property of another person:

(1) Knowing that the property was stolen; or
(2) Having good reason to believe the property was stolen.

(b) As used in this section, "receiving" means acquiring possession, control, or title or lending on the security of the property.

(c) The following give rise to a presumption that a person knows or believes that property was stolen:

(1) The unexplained possession or control by the person of recently stolen property; or
(2) The acquisition by the person of property for a consideration known to be far below the property's reasonable value.

(d) It is a defense to a prosecution for the offense of theft by receiving that the property is received, retained, or disposed of with the purpose of restoring the property to the owner or another person entitled to the property.

Subsection (e) of the statute sets forth what class of felony the theft by receiving is depending on the value of the property. If the property is valued at less than $2,500, it is a classified as a misdemeanor.

While law enforcement officers are given substantial latitude in interpreting and drawing inferences from the facts, that latitude is not without limits. *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) (citation omitted). First, "[e]vidence that tends to negate the possibility that a suspect has committed a crime is relevant to whether the officer had probable cause. An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggest that probable cause exists." *Id.* (citations omitted). Second, "law enforcement officers have a duty to conduct a reasonably thorough

8

investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as 'law enforcement would not [be] unduly hampered ... if the agents ... wait[] to obtain more facts before seeking arrest.'" *Id.* (quoting *United States v. Woolbright*, 831 F.2d 1390, 1394 (8th Cir. 1987)).

In this case, the probable cause affidavit reflects that Gladden advised officers that he was driving the vehicle with the permission of his unidentified uncle. Nothing before the Court reflects whether Gladden's claim was investigated prior to his arrest. Gladden had been known to be in the area with the vehicle for a period of time and was staying with his father. There is nothing suggesting the existence of exigent circumstances. For purposes of screening, the Court believes a plausible claim has been stated. Whether the claim will survive scrutiny under a more onerous standard remains to be seen.

### C. Excessive Force

A claim that excessive force was used during an arrest is governed by the Fourth Amendment's objective reasonable reasonableness standard. *MacKintrush v. Pulaski Cty. Sheriff's Dep't*, 987 F.3d 767, 770 (8th Cir. 2021).

> To determine objective reasonableness, a court may look to the relationship between the need for the use of force and the amount of force used; the extent of plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (internal quotation marks and citations omitted).

Here, Gladden has alleged he was slammed to the ground causing injury to his appendix which then ruptured and had to be removed. A plausible claim has been stated for purposes of screening.

### D.     Interrogation without Counsel

The right to counsel is protected by both the Fifth and the Sixth Amendments. *Patterson v. Illinois*, 487 U.S. 285, 297-98 (1988). The Fifth Amendment protection provides the right to counsel during custodial interrogations. *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) ("*Miranda* thus declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation"). "If the accused indicates that he wishes to remain silent, "the interrogation must cease.' If he requests counsel, 'the interrogation must cease until an attorney is present.'" *Id.* (quoting *Miranda v. Arizona*, 384 U.S. 436, 474 (1966)). The Supreme Court has said that:

> [i]t is reasonably clear under our cases that waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

*Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

In this case, while Gladden asserts he was interrogated without counsel, he does not allege the Defendants failed to advise him of his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436 (1966). He does not allege he invoked his right to remain silent and/or requested counsel. *Berghuis v. Thompkins*, 560 U.S. 370 (2010) (holding that invocation of the right to remain silent must be clear and unambiguous). Thus, Gladden has failed to state a plausible Fifth Amendment claim.

The Sixth Amendment right to counsel attaches "at or after the time that judicial proceedings have been initiated ... 'whether by way of formal charge, preliminary hearing, indictment, information or arraignment.'" *Fellers v. United States*, 540 U.S. 519, 523 (2004) (quoting *Brewer v. Williams*, 430 U.S. 387, 398 (1977)). After an adversary judicial proceeding

has commenced, the Sixth Amendment provides a right to counsel at a "critical stage" even when there is no interrogation and no Fifth Amendment applicability. *United States v. Wade*, 388 U.S. 218 (1967).

Gladden does not allege he was denied counsel once the adversary proceedings were initiated. Gladden has, therefore, failed to allege a plausible violation of his Sixth Amendment right to counsel.

### E.     Denial of Medical Care

Although an arrestee's claim of denial of medical care arises under the Due Process Clause, the Eighth Circuit applies the Eighth Amendment deliberate indifference standard. *Barton v. Taber*, 908 F.3d 1119, 1123-24 (8th Cir. 2018). "To establish a constitutional violation based on deliberate indifference, [Gladden] must show that [he] suffered from an objectively serious medical need and that [each Defendant] had actual knowledge of that need but deliberately disregarded it." *Id.* at 1124 (citations omitted).

The Court believes Gladden has asserted a plausible denial of medical care claim. He alleges that he was seriously injured during his arrest, and that Defendants then denied him medical care at the scene of the arrest.

No plausible claim is stated, however, with respect to the alleged continual denial of medical care while he was incarcerated. "Government officials are personally liable only for their own misconduct." *S.M. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). Section 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (internal quotation marks and citation omitted). Gladden has not alleged that Defendants Huber or Rogers worked in the detention facility or had any part in making medical decisions at the facility.

## IV. CONCLUSION

For the reasons discussed above, it is recommended that:

(1) All claims against Defendants Holland and Waggoner be dismissed for lack of personal jurisdiction.

(2) All Fifth and Sixth Amendment Denial of Counsel Claims be dismissed. And,

(3) The denial of medical care claims arising after Gladden's incarceration be dismissed.

This leaves for later resolution Gladden's false arrest claim, his excessive force claim, and his denial of medical care at the scene of the arrest claim. By separate order the Amended Complaint will be served on Defendants Huber and Rogers.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 10th day of October 2024.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE